UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MICHAEL KELLY,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>RAYMOND MADDEN, Warden,<br><br>　　　　Respondent. | No. 1:16-cv-01577-DAD-JLT (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation serving an indeterminate sentence of 25 years-to-life plus 8 years for his 2014 conviction in Fresno County Superior Court of multiple sex offenses. Petitioner has filed the instant habeas petition challenging his conviction. The Court finds that the state court rejections of his claims were not contrary to, or an unreasonable application of, Supreme Court precedent and recommends the petition be **DENIED.**

**I.      PROCEDURAL HISTORY**

On March 19, 2014, Petitioner was convicted in the Fresno County Superior Court of two counts of forcible oral copulation (Cal. Penal Code § 288a(c)(2)(A)), one count of kidnapping (Cal. Penal Code § 207(a)), and an aggravated kidnapping circumstance as to one count of forcible oral copulation (Cal. Penal Code § 667.61(d)(2)). People v. Kelly, 245 Cal.App.4th 1119, 1124 (2016). On April 17, 2014, he was sentenced to a term of 25 years-to-life, plus a

1

consecutive term of eight years.  Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA").  The Fifth DCA affirmed the judgment on March 24, 2016.  Id.  Petitioner then filed a petition for review in the California Supreme Court.  The petition was summarily denied on June 22, 2016.  Id.

On October 19, 2016, Petitioner filed the instant petition for writ of habeas corpus in this Court.  (Doc. 1.[1])  Respondent filed an answer on August 7, 2017.  (Doc. 28.)  Petitioner filed a traverse to Respondent's answer on September 11, 2017.  (Doc. No. 31.)

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

> On December 24, 2012, at approximately 5:45 p.m., Dulce R. was walking home on M Street in Fresno. As she was walking, she observed a gray Ford Mustang drive by her twice. Unfamiliar with the area, Dulce reached a dead end on M Street and Heaton and turned around. When she turned around, she saw a man, defendant, walking toward her. Dulce crossed the street and defendant crossed as well. Defendant caught up to her and pushed her six to eight steps backwards to a grassy area by the side of a warehouse.
>
> Dulce, who speaks essentially no English, told defendant, "No, please." Defendant told her to be quiet and not to yell. Dulce thought he wanted money and offered defendant $20 and her cell phone. Defendant threw her phone and purse on the ground and pushed her onto the ground. He pushed Dulce's shirt and bra up and began kissing her mouth and breasts. She repeatedly told defendant "no." He pulled down Dulce's pants and orally copulated her. Defendant then stood up, pulled Dulce to her knees by her arm and her hair, and forced her to orally copulate him.
>
> After 10 minutes, defendant grabbed Dulce by the arm and forced her into his vehicle, a gray Ford Mustang. He threw her purse in the backseat of his car and drove to the Bag–O–Bag liquor store in Fresno. Defendant left Dulce in the car while he went inside. As soon as he was inside, Dulce fled to a nearby Walgreens, where she passed out. When she came to, police and emergency personnel had arrived.
>
> Dulce showed Officer Ana Chavarin of the Fresno Police Department the route she took to walk home and the location where the incident occurred. Chavarin observed that the grass where the incident occurred appeared to be flattened. Police sighted defendant's Mustang the next day. The vehicle was stopped and Dulce's purse was recovered from the backseat.

---

[1] Page citations are to ECF pagination.

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

A criminalist determined defendant's DNA was on Dulce's lower lip and right breast.

*Defense's Case*

Defendant testified in his own defense. He claimed he was driving home when he saw Dulce walking on M street and Ventura. Believing she was a sex worker, he drove by her again at Tulare Street and Van Ness. Defendant drove around the block, parked his car, and jogged over to her. He offered Dulce $20 for sex and claimed she agreed. They walked to a grassy area 10 feet from the street, by the side of a warehouse.

Defendant and Dulce began kissing. He claimed he felt like it was love at first sight and he believed he was making her his girlfriend. Defendant performed oral sex on Dulce, and she performed oral sex on him. He maintained it was consensual.

After 10 minutes, Dulce suggested they go to her house and defendant agreed. They walked arm in arm to defendant's car, like a couple. Dulce was not sure how to get to her house so they decided to go to defendant's home. As they were driving, she received a phone call and began to act anxious. Dulce asked defendant to stop at a liquor store and gave him money to purchase beer. When he came out of the store, she was gone. Defendant was not surprised Dulce left because she was acting nervous during the car ride. Defendant found Dulce's purse in his car after he drove home. Unable to find any identification in her purse, he took the money he found inside.

Kelly, 245 Cal.App.4th at 1124-26.

### III. DISCUSSION

    A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA

and is therefore governed by its provisions.

   B.   Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539

4

U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Claims

The instant petition presents the following grounds for relief: 1) There was insufficient evidence to support the enhancement for aggravated kidnaping; 2) Petitioner's enhancement for aggravated kidnaping must be reversed as a violation of double jeopardy because the jury found not true the lesser included offense of simple kidnap; and 3) The aggravated kidnaping enhancement must be reversed because the jury found not true the lesser included offense of simple kidnap and because the trial court failed to ascertain the true intent of the jury.

1. Insufficient Evidence

a. State Court Opinion

Petitioner first alleges that the evidence was insufficient to support the enhancement for aggravated kidnaping because the kidnaping occurred after the sex offenses. The claim was raised on direct appeal to the state courts. In the last reasoned decision, the Fifth DCA denied the claim as follows:

The jury found defendant guilty of two counts of forcible oral copulation, a felony sex offense under section 667.61, subdivision (c). As to count 1, the jury also found true an aggravated kidnapping circumstance (§ 667.61, subd. (d)(2)).

On appeal, defendant argues the circumstance does not apply because the prosecutor elected to proceed on one of two possible theories of kidnapping: defendant's movement of the victim to the liquor store. He asserts this act is insufficient to support the circumstance because the kidnapping did not occur until after the acts of forcible oral copulation concluded. We disagree.

Defendant was sentenced to an indeterminate term of 25 years to life pursuant to the One Strike law, an alternative sentencing scheme applicable to eligible felony sex offenses (*People v. Jones* (1997) 58 Cal.App.4th 693, 709, 68 Cal.Rptr.2d 506). The scheme provides a sentence of 15 or 25 years to life in prison when a defendant is convicted of a sex crime enumerated within subdivision (c) of section 667.61, and certain factual allegations are found true, most of which concern the manner in which the offense was committed (§ 667.61, subds. (d), (e)).

We agree with defendant's assertion the prosecutor elected to prove the aggravated kidnapping circumstance based on defendant's act of moving the victim by driving her 3.7 miles to a liquor store. At trial, the prosecutor presented evidence of two acts of kidnapping. The first was defendant's initial act of forcing the victim to the grassy area by the warehouse. The second was defendant's act of driving the victim to the liquor store.

In closing argument, the prosecutor emphasized to the jury defendant's act of driving the victim to a liquor store constituted the aggravated kidnapping circumstance. Pursuant to section 667.61, subdivision (d)(2), an aggravated kidnapping circumstance requires proof (1) the defendant kidnapped the victim and (2) "the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c)." The prosecutor argued defendant substantially increased the risk of harm to the victim when he moved her to the liquor store because she was alone with defendant in his car, unable to scream for help, and her only means of escape was to exit a moving vehicle.

Where a pleading charges a defendant with one criminal act but the evidence tends to show more than one such act, the prosecutor must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act. (*People v. Thompson* (1995) 36 Cal.App.4th 843, 850, 42 Cal.Rptr.2d 798.) Here, the prosecutor elected to prove the aggravated kidnapping circumstance based on defendant's act of moving the victim to the liquor store, not the slight movement of the victim from the sidewalk to the grassy area by the warehouse. Although he also requested a unanimity instruction, the prosecutor's statements in closing argument were a clear and direct election, and it can be reasonably inferred the instruction was requested as a precautionary measure.

Based on this theory, defendant argues there is insufficient evidence to support the aggravated kidnapping circumstance because the kidnapping did not occur until after the sexual offense had concluded. He contends the circumstance only applies where a qualifying sex offense occurs "in the commission of" or "during the commission of" a kidnapping.

*People v. Jones, supra*, 58 Cal.App.4th 693, 68 Cal.Rptr.2d 506 is instructive on

the issue. In *Jones*, the defendant raised a challenge to the sufficiency of the evidence supporting an aggravating kidnapping circumstance. (*Id*. at pp. 712–713, 68 Cal.Rptr.2d 506.) The defendant argued the circumstance applied only if he kidnapped the victim with the specific intent to commit a sexual offense, but there was insufficient evidence of such intent. (*Id*. at p. 716, 68 Cal.Rptr.2d 506.) The Fourth Appellate District disagreed, reasoning the express language of subdivision (d)(2) of section 667.61 does not require specific intent. (*Jones*, at p. 717, 68 Cal.Rptr.2d 506.) The court further opined "[it] would appear the circumstance would apply if the defendant commits the sexual offense, then, as an afterthought, kidnaps the victim...." (*Ibid*.)

Although the issue in Jones was whether the aggravated kidnapping circumstance requires specific intent, rather than whether a sex offense must occur during the commission of a kidnapping, the reasoning is persuasive. Nothing in section 667.61, subdivision (d)(2) provides the circumstance applies only where a defendant commits a sex offense, in or during the commission of a kidnapping. (See *People v. Luna* (2012) 209 Cal.App.4th 460, 467, 146 Cal.Rptr.3d 841 [analyzing a similar provision, simple kidnapping (§ 667.61, subd. (e)(1)), and holding similar to aggravated kidnapping, simple kidnapping does not require the defendant commit the sex offense during a kidnapping].)

Unlike aggravated kidnapping (§ 667.61, subd. (d)(2)), other circumstances within the same statutory scheme explicitly provide the qualifying sex offense must occur during the commission of the circumstance. Section 667.61 provides for an increased penalty where the defendant "inflicted aggravated mayhem or torture on the victim or another person in the commission of the present offense" (id., subd. (d)(3)), "committed the present offense during the commission of a burglary" (id., subd. (d)(4)), "used a dangerous or deadly weapon ... in the commission of the present offense" (id., subd. (e)(3)), tied up or bound "the victim or another person in the commission of the present offense" (id., subd. (e)(5)), or "administered a controlled substance to the victim in the commission of the present offense" (id., subd. (e)(6)). In drafting section 667.61, we presume the Legislature was aware of the construction of the phrase "in the commission of," and because the term was not employed in subdivision (d)(2), we infer the omission was intentional. (See *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576, 273 Cal.Rptr. 584, 797 P.2d 608 ["When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded' "].) We will, therefore, not read the phrase into subdivision (d)(2) of section 667.61.

We also observe the *Jones* court's interpretation of the kidnapping circumstance is in accord with the purpose of the statute: to ensure serious sex offenders receive lengthy prison sentences upon their first conviction when their crimes are committed under circumstances elevating their victim's vulnerability. (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1296, 94 Cal.Rptr.2d 784.) It would be absurd to construe the statute to apply only where a kidnapping precedes a sexual offense when the risk of harm to a victim who is sexually assaulted and then kidnapped is no less substantial. Indeed, had the victim here not escaped before defendant took her to his home, we can only surmise what additional harm would have been inflicted upon her.

However, even if the Legislature had intended the circumstance apply only to sexual offenses that occur during the commission of kidnapping, the circumstance would still apply here. The Sixth Appellate District explained in *People v. Alvarado* (2001) 87 Cal.App.4th 178, 189–190, 104 Cal.Rptr.2d 624, in

7

interpreting statutes that provide enhanced punishment for conduct performed during the commission of a felony, such as section 667.61, courts look to felony-murder cases to define the phrase "in the commission of." For purposes of felony murder, a felony sex offense has been held to be continuous as long as the victim has not been disposed of or remains confined (*People v. Guzman* (1988) 45 Cal.3d 915, 952, 248 Cal.Rptr. 467, 755 P.2d 917), until the perpetrator reaches a place of temporary safety (*People v. Portillo* (2003) 107 Cal.App.4th 834, 843, 132 Cal.Rptr.2d 435), or as long as the perpetrator maintains control over the victim (*People v. Castro* (1994) 27 Cal.App.4th 578, 586, 32 Cal.Rptr.2d 529).

We need not decide how the temporal duration of a sex crime must be measured for purposes of aggravated kidnapping because the facts of the instant case plainly warrant application of the circumstance. Although the physical act of forcible oral copulation concluded when defendant kidnapped the victim, the offense had not. Rather than releasing the victim or fleeing the scene of the crime, defendant forced her into his vehicle and drove her to a liquor store. Thus, even if the aggravated kidnapping circumstance implicitly required a sex offense occur "during the commission of" or "in the commission of" kidnapping, the circumstance would apply here.

Based on the foregoing interpretation, we conclude substantial evidence supports the jury's finding on the aggravated kidnapping circumstance. Aggravated kidnapping, pursuant to section 667.61, subdivision (d)(2), applies where (1) the perpetrator is convicted of a sexual offense specified in subdivision (c) of section 667.61, (2) the perpetrator kidnapped the victim of the offense and (3) the movement of the victim substantially increased the risk of harm to the victim above that necessarily inherent in the underlying offense.

Defendant was convicted of two acts of forcible oral copulation against the victim, a sex offense specified in subdivision (c) of section 667.61. After the sexual assault, he forced the victim into his vehicle and drove her to a liquor store. Kidnapping requires the People to prove (1) the victim was moved a substantial distance (2) the movement was accomplished by use of physical force or fear and (3) the movement was nonconsensual. (*People v. Jones* (2003) 108 Cal.App.4th 455, 462, 133 Cal.Rptr.2d 358; *People v. Martinez* (1999) 20 Cal.4th 225, 237, 83 Cal.Rptr.2d 533, 973 P.2d 512 [a substantial distance must be more than trivial or slight].) Because the victim here testified defendant forced her into his vehicle, despite her repeated pleading, and other evidence demonstrated defendant drove the victim a substantial distance, 3.7 miles, to the liquor store, this element has been satisfied.

The last element, which considers the increased risk of harm to the victim, is also satisfied where there is substantial asportation of the victim. (*People v. Jones*, supra, 58 Cal.App.4th at p. 713, 68 Cal.Rptr.2d 506.) The jury may also consider the defendant's "'decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes.'" (*Ibid*.)

As noted, defendant drove the victim 3.7 miles to a liquor store, a substantial distance. Moreover, his movement of the victim—from the grassy area near a relatively public setting into the isolation of his vehicle—decreased the likelihood of his detection and increased the risk of harm to the victim based on her foreseeable attempts to escape. Until defendant arrived at the store, the victim's only option to escape was to exit a moving vehicle. We conclude substantial evidence supports the aggravated kidnapping circumstance.

Kelly, 245 Cal.App.4th at *1126-30.

        b.      Federal Standard

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

9

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2-3.

        c.      Analysis

Respondent argues that the claim fails to present a cognizable federal claim. The Court agrees.

Petitioner contends the aggravated kidnaping circumstance is inapplicable because the movement of the victim took place after the crime of forcible oral copulation had already been accomplished. He argues the circumstance only applies where the sexual offense occurs "in the commission of" or "during the commission of" the kidnaping. The state court reviewed the relevant state statute, Cal. Penal Code § 667.21(d)(2), and found it was not limited in such a way. The Fifth DCA construed the circumstance to include kidnaping that occurs after the sexual offense had already been accomplished. A determination of state law by a state appellate court is binding in a federal habeas action. Hicks v. Feiock, 485 U.S. 624, 629 (1988). A federal court has no basis for disputing a state's interpretation of its own law. Clemons v. Mississippi, 494 U.S. 738, 739–740 (1990). Thus, Petitioner's contention that the state court misinterpreted California law is not cognizable by way of § 2254.

Even if the claim were cognizable, it is clear that the state court determination was not unreasonable. The Fifth DCA noted that even if the statute required that the kidnaping occur during the commission of the sexual offense, the facts here supported the finding. As noted by the state court, even though the physical act of forcible oral copulation had concluded, the crime had not. The victim was still under the control of Petitioner. He did not release her or flee the scene. Rather, he forced her into his car and transported her. Thus, the offense was still ongoing. Petitioner fails to demonstrate that the state court's determination was objectively unreasonable. The claim should be denied.

    2.      Double Jeopardy

        a.      State Court Opinion

Petitioner next contends that the aggravated kidnaping enhancement violates double

jeopardy principles because the jury had found not true the lesser included offense of simple kidnap. This claim was also raised and denied on direct appeal. In the last reasoned decision, the Fifth DCA rejected the claim as follows:

> In his second claim on appeal, defendant challenges the jury's true finding on the aggravated kidnapping circumstance and not true finding on the lesser included simple kidnapping circumstance. He contends double jeopardy precludes conviction of the greater circumstance where a defendant is found not guilty of a lesser included circumstance.
>
> . . .
>
> Inconsistent verdicts are generally accepted as an occasional product of our criminal justice system. (*People v. Palmer* (2001) 24 Cal.4th 856, 860.) "[I]f an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." (*People v. Santamaria* (1994) 8 Cal.4th 903, 911.) "The rule applies equally to inconsistent enhancement findings …." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405.) The "[justice] system accepts the possibility that 'the jury arrived at an inconsistent conclusion through "mistake, compromise, or lenity."'" (*People v. Guerra* (2009) 176 Cal.App.4th 933, 943.)
>
> Although this principle is well-settled, defendant contends the jury's inconsistent verdicts violate the double jeopardy clause. The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution provide that a person may not be twice placed "in jeopardy" for the "same offense" after acquittal. Double jeopardy bars against prosecuting an individual for the same act after an acquittal or conviction. (*People v. Bright* (1996) 12 Cal.4th 652, 660, overruled on other grounds as stated in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6.)
>
> Defendant argues his punishment for the aggravated kidnapping circumstance is prohibited under the double jeopardy clause because the jury found not true the lesser included simple kidnapping circumstance. However, defendant was tried but once, and he was not punished for the lesser included circumstance. As such, double jeopardy does not apply.

(Doc. 28-1 at 10-11.)

        b.      <u>Legal Standard and Analysis</u>

The appellate court concluded that double jeopardy is not implicated in this case, and this Court agrees. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting

North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). As noted by the appellate court, Petitioner was not twice prosecuted for the same offense. In addition, he was not convicted of both offenses, nor was he punished twice for the same offense. Therefore, the Double Jeopardy Clause is inapplicable. The claim should be rejected.

3. <u>Instructional Error</u>

    a. <u>State Court Opinion</u>

Last, Petitioner argues that the trial court violated state law by failing to instruct the jury to reconsider its verdict in light of the inconsistent circumstance findings. Specifically, he challenges the fact that the jury found the simple kidnap charge not true, yet it found true the aggravated kidnaping enhancement. He claims this inconsistency requires reversal of the circumstance. Petitioner raised this claim on direct review. The Fifth DCA denied the claim as follows:

> Defendant also asserts the jury's finding must be reversed because the trial court violated section 1161 by not determining the jury's true intent after reviewing the verdict forms. We are not persuaded by either argument.
>
> Inconsistent verdicts are generally accepted as an occasional product of our criminal justice system. (*People v. Palmer* (2001) 24 Cal.4th 856, 860.) "[I]f an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." (*People v. Santamaria* (1994) 8 Cal.4th 903, 911.) "The rule applies equally to inconsistent enhancement findings …." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405.) The "[justice] system accepts the possibility that 'the jury arrived at an inconsistent conclusion through "mistake, compromise, or lenity."'" (*People v. Guerra* (2009) 176 Cal.App.4th 933, 943.)
>
> …
>
> Defendant also contends the trial court violated section 1161 by failing to instruct the jury to reconsider its verdict on the inconsistent circumstance findings. Section 1161 provides, in relevant part: "When there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court *may* explain the reason for that opinion and direct the jury to reconsider their verdict …; but when there is a verdict of acquittal, the court cannot require the jury to reconsider it." (Italics added; see *People v. Carbajal* (2013) 56 Cal.4th 521, 530.)
>
> According to the plain language of section 1161, a trial court has the right to direct a jury to continue deliberations, but it is not obligated to do so. Defendant fails to cite any authority imposing an affirmative obligation on the trial court to direct the jury to reconsider an inconsistent verdict. Although such a direction would have been prudent here, we find no reversible error from the court's failure to do so.

12

In *People v. Davis* (1988) 202 Cal.App.3d 1009, 1014-1015 (*Davis*), a jury found the defendant guilty of second degree murder, but not guilty of the lesser included offenses of voluntary and involuntary manslaughter. The jury was instructed on first degree murder, second degree murder, and voluntary and involuntary manslaughter. (*Id.* at p. 1014.) The trial court also instructed the jurors to consider the possible homicide verdicts in order of decreasing severity until they unanimously agreed on a guilty verdict, deadlocked at a level, or agreed on a not guilty verdict at all levels. (*Ibid.*)

The issue before this court was not jury reconsideration, but whether the inconsistent verdict amounted to reversible error. (*Davis, supra*, 202 Cal.App.3d at p. 1016.) This court characterized the jury's failure to follow the court's instruction as a technical error; the jurors mistakenly believed they had to complete all forms given to them, and signed the manslaughter verdicts rather than leaving them blank. (*Id.* at p. 1017.) The defendant did not challenge the sufficiency of the evidence of his second degree murder conviction, and he was not prejudiced as a result of the error. (*Ibid.*) As such, the court found no basis for reversal of the defendant's conviction. (*Ibid.*)

In *People v. Caird* (1998) 63 Cal.App.4th 578, 585-586 (*Caird*), the trial court sent the jury back to reconsider its verdict after the jury found the defendant guilty of a forcible lewd act, but not guilty of the lesser included offense of a nonforcible lewd act. The jury returned with the same finding. (*Id.* at p. 586.) The trial court polled jury members individually and determined the jury had intended to convict the defendant of the greater offense and, therefore, did not intend to reach a decision on the lesser included offense. (*Ibid.*) As a result, the trial court struck the jury's finding on the lesser included offense. (*Ibid.*)

On appeal, the defendant argued the trial court erred in sending the jury back to reconsider its not guilty verdict. (*Caird, supra*, 63 Cal.App.4th at pp. 585-586.) Under section 1161, trial courts are statutorily prohibited from directing juries to reconsider verdicts of acquittal. The *Caird* court held the jury was not asked to reconsider a not guilty finding, the trial court merely clarified the jury's intent as to the inconsistent verdict forms. (*Id.* at p. 588.) The court denied reversal, finding the jury's inconsistent verdict was a technical error, and further explained, technical defects may be disregarded where the jury's intent is unmistakably clear and the defendant is not prejudiced. (*Id.* at p. 589.)

Here, as in *Davis*, the issue is not one of jury reconsideration under section 1161. The trial court declined to exercise its judgment to direct the jury to reconsider its inconsistent finding on the aggravated kidnapping circumstance. In addition, we do not find the jury's verdicts to be so inconsistent as to require reversal.

Similar to *Davis* and *Caird*, the verdicts here appear to be merely a technical error. Although the trial court characterized the jury's inconsistent verdicts as an act of mercy, we need not speculate as to the cause of the error because the jury's intent is unmistakable from the record. During deliberations, the jury sent a note to the court to ask whether a unanimous vote had to occur to find the enhancements true or not true. The court responded affirmatively, and the jury found the aggravated kidnapping circumstance true. The trial court polled the jury individually and the verdict was affirmed by each member. Thus, the jury evidently intended to find the aggravated kidnapping circumstance true.

(Doc. 28-1 at 11-13.)

13

b. Legal Standard and Analysis

Petitioner alleges the trial court violated Cal. Penal Code § 1161 by failing to instruct the jury to reconsider its verdict on the inconsistent circumstance findings. It is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings). As this claim is based on a violation of state law, it is not cognizable in this federal habeas action.

Moreover, there is no Supreme Court authority which would require the court to direct a jury to reconsider an inconsistent verdict. In fact, the Supreme Court has held that "[c]onsistency in the verdict is not necessary." Dunn v. United States, 284 U.S. 390, 393 (1932). In situations such as this, "where truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." United States v. Powell, 469 U.S. 57, 64-65 (1984) (quoting Dunn, 284 U.S. at 393). The Supreme Court noted that inconsistent verdicts may be a product of error or jury lenity. Powell, 469 U.S. at 65. Thus, both verdicts are given effect; the defendant "is given the benefit of [the] acquittal," and the defendant is "require[d] [] to accept the burden of conviction on the counts on which the jury convicted." Id. at 69. In this case, Petitioner received the benefit of acquittal on the charge of simple kidnap, but he must accept the burden of conviction on the aggravated kidnaping circumstance. The claim should be denied.

**IV. RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy of this Findings and Recommendation, any party

may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 22, 2017**        /s/ Jennifer L. Thurston
                                                              UNITED STATES MAGISTRATE JUDGE